TEPATASI PUAILOA, Plaintiff

v.

KENNISON BARBER, Defendant

High Court of American Samoa
Trial Division

CA No. 11-89

April 24, 1991

Before KRUSE, Chief Justice, AFUOLA, Associate Judge, MATA'UTIA, Associate Judge.

Counsel: For Plaintiff, Charles V. Ala'ilima
For Defendant, Togiola T.A. Tulafono

Upon joint motion of the parties, trial herein was bifurcated on the separate issues of liability and damages. We earlier found the defendant negligent and that his negligence was the proximate cause of certain injuries sustained by plaintiff. We held that the defendant was accordingly liable to the plaintiff for damages and subsequently heard further evidence.

After the accident, plaintiff was admitted to the L.B.J. Tropical Medical Center at Faga'alu. He had minor lacerations and extensive bruising, but he also complained of severe pains especially to his back, neck, and right hip-joint area, together with numbness in his legs. While x-rays failed to reveal any evidence of fracture or spinal injury, plaintiff became progressively weak in his legs and was shortly thereafter virtually bound to a wheelchair. To compound the difficulty with the diagnostic efforts, plaintiff was also known to have an extended history of "Bechterew's disease" (ankylosing spondylitis)--a condition which

produces degenerative changes in the spine and spinous processes with ossification of tendons and soft tissue; the spine becomes fused and rigid with the result that flexion thereby naturally becomes curtailed; this, in turn, affects a certain range of body movements.[1] At the same time, it became increasingly evident that plaintiff was also showing signs of spinal cord damage, and therefore the admitting physician, Dr. No'ovao, recommended off-island spinal testing and treatment which could not be facilitated locally. Plaintiff was eventually referred to Straub Clinic in Honolulu, Hawaii.[2]

---

[1] In a letter to plaintiff's attorney, dated September 20, 1990, Dr. John B. McCully of the L.B.J. Surgical Division summarized his findings following his examination of plaintiff. Among other things, Dr. McCully noted that plaintiff's lower or lumbar spine was notably flat--he had a stoop and walked slowly; while able to bend forward to touch his knees, plaintiff had no extension and virtually no lateral flexion to either side; rotation, or ability to twist from side to side, was limited at 20 to 30 degrees. His head and neck movements were also significantly reduced-- he had no upward gaze ability (extension) other than eye movement; forward flexion was at 50%; lateral flexion, right and left side, was 10 degrees at most; and rotation was also 10 degrees. The hips have also become significantly deformed because of a certain degree of fusion; x-rays show that the sacroiliac joints have been obliterated; this has also reduced flexion and hence movement. Finally, x-rays also revealed degenerative changes with both knee-joints, with a loss of lateral joint space.

[2] There was a six-week delay in off-island evacuation because of money problems. Dr. No'ovao's notes on file suggest that while plaintiff's case was referred to the hospital's off-island referral committee, the committee did not seem to regard plaintiff as eligible for off-island treatment at government expense and insisted that plaintiff pursue such insurance claims as may be available to him. Eventually, the defendant's insurer for compulsory third-party liability insurance under A.S.C.A. §§ 22.2001 et seq. settled with plaintiff and paid out policy limits in the amount of $10,000.00. According to plaintiff, half of this sum was deposited with Straub Clinic, while the remainder was used for his airfares and other incidental expenses. As a result of extended hospitalization in Honolulu, plaintiff apparently owed Straub Clinic some $58,000.00. This debt has been reduced to final judgment. *See Straub Clinic v. Puailoa*, CA No. 100-89 (1990).

On November 29, 1988, plaintiff was admitted to Straub and was immediately referred to a number of specialists. Examinations not only confirmed a significant degree of ankylosing spondylitis, they also revealed a fracture to the T5 or T6 vertebra. The examining doctors also discovered an accumulation of debris made up of "bony fragments and disc material as well as hematoma" against the spinal cord (mid-thoracic area), which was causing a build-up of pressure. On December 10, 1988, plaintiff had to undergo a thoracic laminectomy to remove the mentioned debris. Post-operatively, plaintiff appeared at first to be doing well, but he subsequently began feeling weak again in his lower extremities. Another exam revealed more hematoma build-up in the same area of the spine, and plaintiff had to undergo another laminectomy two days later. Following the latter operation, plaintiff was observed as beginning to improve in his "function and strength." According to Dr. John B. McCully of the L.B.J. Tropical Medical Center, surgical division, the recovery process thereafter, albeit slow and painful, was basically a matter of physical therapy assisted by certain medication to assist in rehabilitating muscle damage. Over many months plaintiff gradually regained his mobility.

In terms of measuring recovery from injuries resulting from the accident, Dr. McCully explained on the witness stand that this was difficult to do in the case of plaintiff, since recovery is usually measured by comparison with a prior, healthy body. Plaintiff's current complaints and debilitating condition were also consistent with ankylosing spondylitis throughout his entire spine. On balance, Dr. McCully opined that plaintiff had probably recovered completely from the injuries he sustained as a result of the accident.

At the time of the accident, plaintiff was 36 years old. He testified that he has been a resident of California since 1960; however, he also says that he has been in Samoa off-and-on since 1985 helping to manage his father's estate, for which he basically received bed and board. Plaintiff also alluded to having been in the trucking business in California, which he gave up for reasons unknown. The trucking business, however, varied in explanation from that of a self-employed truck driver to that of an autonomous operation run by five employees. We find that plaintiff's relationship with his father's household more accurately depicts his economic situation at the time of the accident. On the foregoing, we fix general damages in the sum of $35,000.00.

Plaintiff also seeks judgment for his medical bills incurred with Straub, which we have already alluded to in footnote 2, *supra*. It is trite

50

law that a plaintiff seeking damages for personal injuries is entitled to recover the reasonable value of medical services rendered to him because of the injury. *See* 22 Am. Jur. 2d *Damages* § 197 (1988).[3] The question that follows is "what is reasonable?" The evidence shows that plaintiff's admitting physician, Dr. No'ovao, felt that off-island examination was necessary. There was no evidence to the contrary. Also in evidence is a copy of an itemized invoice from Straub Clinic relating to services presumably rendered to plaintiff. Apart from a number of unexplained items under the notation "phone call," the billings do reflect the course of treatment otherwise explained in the medical evidence. The invoice presents a total figure, inclusive of state taxes, in the amount of $58,656.00, of which $220.00 represents unexplained phone calls for which defendant may not be held liable. We hold that the foregoing constitutes a *prima facie* showing of reasonable value of medical expenses and accordingly fix special damages in the sum of $58,400.00.

Less the sum of $10,000.00 paid by defendant's insurer for compulsory third-party liability (*see* note 2, *supra*), we conclude that plaintiff, Tepatasi Puailoa, shall have judgment against the defendant, Kennison Barber, in the sum of $83,400.00.

It is so ordered.

---

[3] This element of damages is rarely at issue in this jurisdiction. Statutorily, "medical attention shall be provided free by the government" to American Samoans and qualified residents. A.S.C.A. § 13.0601. In turn, the government can, under the equitable principle of subrogation, look to the tortfeasor for reimbursement. *See A.I.U. v. American Samoa Government*, 3 A.S.R.2d 115 (1986).

Whether plaintiff could have looked to the government for his medical bills is not an issue before us.